1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

TEMAHAGARI RUBIN,

7                              Petitioner,

8            v.

9    UNITED STATES IMMIGRATION AND
     CUSTOMS ENFORCEMENT FIELD
     OFFICE DIRECTOR,
10

11                             Respondent.

Case No. 2:24-cv-00260-TL-TLF

REPORT AND
RECOMMENDATION

Noted for __July 15, 2024__

12          Petitioner Temahagari Rubin, who is currently detained by U.S. Immigration and

13   Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in

14   Tacoma, Washington and proceeds *pro se*, brings this 28 U.S.C. § 2241 habeas action

15   seeking: immediate release from detention, or a bond hearing. Dkt. 1 at 3, 7. The Court

16   has considered the § 2241 petition, the briefs and exhibits submitted by both parties, the

17   balance of the record, and the governing law. Dkts. 1, 6, 7, 8, 9.

18          For the reasons explained below, petitioner is subject to mandatory detention

19   under 8 U.S.C. § 1226(c) and is not statutorily entitled to a bond hearing or to release

20   from detention. Furthermore, the Court concludes that petitioner's detention does not

21   violate the requirements of due process and he is not entitled to an additional bond

22   hearing on constitutional grounds.

23
24
25

REPORT AND RECOMMENDATION - 1

1   Therefore, petitioner's habeas petition (Dkt. 1) should be DENIED, respondent's

2   motion to dismiss (Dkt. 6) should be GRANTED, and this matter should be DISMISSED

3   with prejudice.

4                                    **BACKGROUND**

5       Petitioner is a native and citizen of the Democratic Republic of Congo. Dkt. 7

6   (Decl. of Daniel Strzelczyk) at 2; Dkt. 8-1 (Ex. A to Decl. of Michelle Lambert) at 2-3. He

7   entered the United States as a refugee on February 27, 2013. *Id.*

8       On August 13, 2014, petitioner was convicted as a juvenile in King County

9   Superior Court of Felony Robbery in the Second Degree and sentenced to 15 to 36

10  weeks confinement at the Juvenile Rehabilitation Administration Center and was

11  ordered to pay $485.00 in restitution. Dkt. 7 (Strzelczyk Decl.) at 2; Dkt. 8-2 (Ex. B to

12  Lambert Decl.) at 3-8.

13      On January 8, 2019, petitioner was convicted in the U.S. District Court for the

14  Western District of Washington of Felon in Possession of a Firearm pursuant to 18

15  U.S.C. § 922(g)(1) and was sentenced to 39 months imprisonment followed by 3 years

16  of supervised release. Dkt. 7 (Strzelczyk Decl.) at 2; Dkt. 8-3 (Ex. C to Lambert Decl.).

17  On that same day petitioner was also convicted of Retaliating Against a Witness

18  pursuant to 18 U.S.C. § 1513(e) and was sentenced to 12 months and 1 day of

19  imprisonment followed by 3 years of supervised release. Dkt. 7 (Strzelczyk Decl.) at 2;

20  Dkt. 8-4 (Ex. D to Lambert Decl.). On March 4, 2019, petitioner was convicted in King

21  County Superior Court of Felony Robbery in the First Degree and sentenced to 40

22

23

24

25

months imprisonment to run concurrently with his federal sentences.[1] Dkt. 7 (Strzelczyk Decl.) at 2; Dkt. 8-5 (Ex. E to Lambert Decl.).

On June 1, 2021, the ICE Office of Enforcement and Removal Operations ("ERO") served petitioner with a Notice to Appear ("NTA") charging him as removable pursuant to: Section 237(a)(2)(C) of the Immigration and Nationality Act ("INA") for having been convicted, any time after admission, of any law relating to possession or carrying a firearm as defined under 18 U.S.C. § 921(a); and INA § 237(a)(2)(A)(iii) for having been convicted, any time after admission, of an aggravated felony as defined under INA § 101(a)(43)(E), to include a conviction of a firearms offense under 18 U.S.C. § 922(g)(1). Dkt. 7 (Strzelczyk Decl.) at 2-3; Dkt. 8-6 (Ex. F to Lambert Decl.).

The NTA was then filed with the Executive Office for Immigration Review; as a result, petitioner was placed in removal proceedings under the Institutional Hearing Program, as he was still in federal criminal custody. Dkt. 7 (Strzelczyk Decl.) at 2-3. While in proceedings, petitioner, represented by counsel, applied for relief from removal. *Id.*

On August 30, 2021, petitioner was transferred from federal criminal custody to ICE custody in Adelanto, California. *Id.*

On February 28, 2022, the Immigration Judge (IJ) conducted a *Rodriguez*[2] bond hearing, during which petitioner was represented by counsel. *Id.*; Dkt. 8-8 (Ex. H to

---

[1] Petitioner was previously arrested on several other occasions as a juvenile but was either not charged or the Government indicates the disposition of the offense was unknown. Dkt. 7 (Strzelczyk Decl.) at 3.

[2] Ninth Circuit case law, at the time, required immigration detainees held pursuant to 8 U.S.C. § 1226(c) for longer than six months to have a bond hearing where the government bore the burden to establish by clear and convincing evidence that the detainee was a flight risk or a danger to the community. *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), *rev'd sub nom. Jennings v. Rodriguez*, 138 S. Ct. 830, *46-48 (2018).

Lambert Decl.). During the hearing the IJ considered records submitted by petitioner -- including character letters, petitioner's testimony regarding his criminal history, and steps towards rehabilitation (including the several classes and programs petitioner participated in while in prison), his family in the United States, and his employment history. Dkt. 8-8 (Ex. H to Lambert Decl.) at 6-25.

The IJ considered the evidence and denied release on bond, finding that the Government had established by clear and convincing evidence that petitioner was a danger to the community. *Id.* at 24-25. The IJ noted that petitioner's criminal history, and "particularly the firearms and the intimidation charges" were of "significant concern." *Id.* Petitioner reserved appeal. *Id.* at 22-23. The written bond order was signed on April 6, 2022. Dkt. 8-12 (Ex. L to Lambert Decl.) at 6-7.

On April 13, 2022, the IJ denied petitioner's applications for relief and ordered him removed to the Democratic Republic of Congo. Dkt. 7 (Strzelczyk Decl.) at 3; Dkt. 8-10 (Ex. J to Lambert Decl.). Petitioner reserved appeal. *Id.*

Petitioner, through counsel, appealed to the Board of Immigration Appeals ("BIA") the IJ's decisions denying his applications for relief from removal and denying bond. Dkt. 7 (Strzelczyk Decl.) at 3. On August 24, 2022, the BIA dismissed petitioner's bond appeal. *Id.*; Dkt. 8-12 (Ex. L to Lambert Decl.) at 4-5. On September 19, 2022, the BIA issued a decision dismissing petitioner's case appeal. Dkt. 7 (Strzelczyk Decl.) at 3; Dkt. 8-11 (Ex. K to Lambert Decl.).

Petitioner filed a Petition for Review with the Ninth Circuit Court of Appeals, along with a motion for a stay of removal. Dkt. 7 (Strzelczyk Decl.) at 3. A temporary stay went into effect. *Id.*

1   On January 24, 2023, the Ninth Circuit issued an order granting the

2   Government's unopposed motion to remand to the BIA. *Id.*; Dkt. 8-13 (Ex. M to Lambert

3   Decl.). In the decision, the Ninth Circuit indicated petitioner's removal was stayed

4   pending the BIA's decision on remand. *Id.* On November 7, 2023, petitioner was

5   transferred to the NWIPC where he remains detained. Dkt. 7 (Strzelczyk Decl.) at 3.

6   On January 29, 2024, petitioner, through counsel, filed a motion to remand the

7   case from the BIA to the IJ for further factfinding. *Id.* On April 11, 2024, the BIA granted

8   the motion and remanded. *Id.*; Dkt. 8-14 (Ex. N to Lambert Decl.).

9   In its order remanding the case to the IJ, the BIA stated:

> The notice to appear filed by DHS alleged that the respondent (1) is not a
> citizen or national of the United States, (2) is a native and citizen of the DRC, (3)
> was admitted to the United States at New York, NY on or about February 27,
> 2013, "as a Not Applicable," (4) was convicted of being a felon in possession of a
> firearm, and (5) was sentenced to 39 months in prison (Exh. 1). During the
> November 5, 2021, hearing before the Immigration Judge, the respondent,
> through counsel, denied all five allegations (Tr. At 48-49). The Immigration Judge
> sustained allegations 1, 2, 4, and 5, but found that DHS did not meet its burden
> to prove allegation 3 (Tr. at 49-53). The Immigration Judge then found that the
> respondent was removable as charged under section 237(A)(2)(C) and section
> 237(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §
> 1227(a)(2)(C), (A)(iii).
> Both charges of removability against the respondent require DHS to
> prove that he was convicted of a qualifying criminal offense 'at any time after
> admission.' INA § 237(a)(2)(C), (A)(iii), 8 U.S.C. § 1227(a)(2)(C), (A)(iii). The
> Immigration Judge's finding that DHS did not meet its burden to establish that the
> respondent was admitted to the United States is inconsistent with his finding that
> the respondent is removable as charged.[3] We will, therefore remand the record
> for the Immigration Judge to conduct further factfinding on the issue of the
> respondent's admission to the United States and whether he is removable as
> charged.[4] On remand, the Immigration Judge should provide DHS an opportunity
> to file substituted allegations and/or removability charges as needed. See 8

[3] [FN 1 by BIA] "The Immigration Judge's decision inaccurately stated he previously determined that all factual allegations in the notice to appear were founded (IJ at 2). Further, his factual finding that the respondent "entered the United States as a refugee" does not constitute a finding that he was admitted as a refugee (IJ at 1), *See* INA § 101(a)(13)(A), 8 U.S.C. § 1101(a)(13)(A) defining "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.").

[4] [FN 2 by BIA] " We note that the respondent did not raise any issue regarding his removability on appeal to the Board.

C.F.R. § 1003.30, 1240.10(c). He should also provide the parties to supplement the record with evidence relevant to the respondent's applications for relief and protection postdating our prior decision dismissing his appeal.

*Id.*

In the federal habeas corpus petition, petitioner asserts the following: (1) petitioner is detained pursuant to 8 U.S.C. § 1226(a) ("subsection (a)") (providing for discretionary detention), and not 8 U.S.C. § 1226(c) ("subsection (c)") (requiring mandatory detention); (2) he is entitled to immediate release or a bond hearing; and (3) his detention violates his constitutional right to due process under the Fifth Amendment. *Id.* Yet in his response to the U.S. Government's motion to dismiss, petitioner acknowledges he is detained pursuant to subsection (c). Dkt. 9 at 15.

Respondent contends that petitioner is detained pursuant to subsection (c) and therefore subject to mandatory detention. Dkt. 6. Respondent argues the procedures in petitioner's situation are consistent with due process. *Id.*

## DISCUSSION

### A.    Statutory Basis for Petitioner's Detention

"Noncitizens in the United States are removable if they fall within any of several statutory classes of removable individuals, one of which is noncitizens convicted of certain enumerated criminal offenses." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (citing 8 U.S.C. § 1227(a)). "Four statutes grant the Government[5] authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b)

---

[5] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the BIA. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

1    ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a)

2    ('Section 1231(a)')."[6] A noncitizen's place "within this statutory scheme can affect

3    whether his detention is mandatory or discretionary, as well as the kind of review

4    process available to him if he wishes to contest the necessity of his detention." *Prieto-*

5    *Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

6    　　　Section 1226(a) authorizes DHS to arrest and either detain or release on bond

7    noncitizens "pending removal proceedings," except as provided in § 1226(c). 8 U.S.C. §

8    1226(a); *Jennings v. Rodriguez*, 583 U.S. 281, 303-04 (2018). When a noncitizen is

9    arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial

10   custody determination, including the setting of bond. *See* 8 C.F.R. § 236.1(c)(8). After

11   the initial custody determination, the detainee may request a bond redetermination by

12   an IJ. 8 C.F.R. § 236.1(d)(1). Once an IJ has made an initial bond redetermination, a

13   detainee's request for a subsequent bond redetermination must be made in writing and

14   must show that the detainee's circumstances have changed materially since the prior

15   bond redetermination. 8 C.F.R. § 1003.19(e).

16   　　　Section 1226(c) states that DHS "'*shall* take into custody any [noncitizen]' who

17   falls into one of the enumerated categories involving criminal offenses and terrorist

18   activities." *Jennings*, 583 U.S. at 303 (quoting § 1226(c)(1)) (emphasis added). DHS

19   "may release" such a noncitizen "*only if*" DHS decides that doing so is necessary for

20

21   _____

     [6] "Section 1225(b) grants the Government authority to detain noncitizens who arrive or are present in the
22   United States but who 'ha[ve] not been admitted.'" *Avilez*, 69 F.4th at 529 (quoting 8 U.S.C. § 1225(b);
     *see also Jennings*, 583 U.S. at 285-89 (describing the subsection's scope)). The Court notes that
23   petitioner's removal proceedings have been remanded to the IJ to conduct further factfinding on the issue
     of the respondent's admission to the United States and whether he is removable as charged. However,
24   neither party argues petitioner has not been "admitted" and is detained under 8 U.S.C. § 1225(b).

25

1    witness-protection purposes and the noncitizen will not pose a danger or flight risk. *Id.*

2    (quoting § 1226(c)(2), emphasis in *Jennings*). Thus, detention of noncitizens falling

3    under section 1226(c) is (outside of the narrow exception for witness protection)

4    mandatory. *Id.*

5        "Subsection C applies throughout the administrative and judicial phases of

6    removal proceedings. . .." *Avilez v. Garland*, 69 F.4th 525, 535 (9th Cir. 2023). This

7    means that individuals who are detained under Section 1226(c) "are not statutorily

8    eligible for release on bond during the judicial phase of the proceedings, except under

9    the narrow circumstances defined by § 1226(c)(2)." *Id.* at 535-36.

10        Section 1226(c) requires mandatory detention if the person is convicted, any time

11    after admission, of any law relating to possession or carrying a firearm as defined under

12    18 U.S.C. § 921(a). *See* 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(C). Section 1226(c) also

13    requires mandatory detention if a person is convicted, any time after admission, of an

14    aggravated felony as defined in INA 101(a)(43)(E), which includes a conviction of a

15    firearms offense under 18 U.S.C. § 922(g)(1). *See* 8 U.S.C. §§

16    1226(c)(1)(B),1227(a)(2)(A)(iii); INA 101(a)(43)(E), 8 U.S.C. § 1101(a)(43)(E)(ii) ("The

17    term 'aggravated felony' means -- … an offense described in -- … [18 U.S.C.] section

18    922(g)(1)"); 18 U.S.C. § 922(g)(1) ("It shall be unlawful for any person -- …who has

19    been convicted in any court of, a crime punishable by imprisonment for a term

20    exceeding on year … to ship or transport in interstate or foreign commerce, or possess

21    in or affecting commerce, any firearm or ammunition; or to receive any firearm or

22    ammunition which has been shipped or transported in interstate or foreign commerce.").

23

24

25

REPORT AND RECOMMENDATION - 8

Here, the IJ initially found that petitioner had been convicted of the crime of Felon in Possession of a Firearm under 18 U.S.C. § 922(g)(1) and found him "removable as charged under 237(A)(2)(C) and section 237(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(C), (A)(iii)." *See* Dkt. 8-14 (Ex. N to Lambert Decl.). At this point the BIA has remanded the matter back to the IJ on the basis that "the [IJ's] finding that DHS did not meet its burden to establish that the respondent was admitted to the United States is inconsistent with his finding that the respondent is removable as charged." *Id.* Accordingly, the IJ has been directed to conduct "further factfinding on the issue of the respondent's admission to the United States and whether he is removable as charged." *Id.*

The Court should hold, as petitioner concedes in his response, that petitioner is subject to mandatory detention pursuant to Section 1226(c), and, therefore, his detention is statutorily authorized. *See Jennings*, 583 U.S. at 304-06.

Furthermore, here, petitioner received a bond hearing at which the Government bore the burden of proof of establishing he was a danger to the community or a flight risk. Under the Court's analysis in *Jennings*, Section 1226(a) does not require more. 583 U.S. at 304-06. Therefore, even if the Court assumed, for purposes of analysis, that petitioner hypothetically was currently detained pursuant to Section 1226(a), he has received the required hearing.

**B.    Due Process**

Even if the Court holds petitioner's detention is statutorily authorized, the Court nevertheless must determine whether it comports with due process.

An IJ has already reviewed petitioner's detention; petitioner now seeks a new bond hearing -- for the reasons discussed below, the Court should therefore apply the

factors, conduct the balancing analysis of *Mathews v. Eldridge*, 424 U.S. 319 (1976),

and should hold the procedures provided are constitutionally sufficient.[7]

      *Mathews* requires courts to consider three distinct factors: (1) the private interest

at stake; (2) the government's interest, including the function involved and the fiscal and

administrative burdens that any additional procedural requirements would entail; and (3)

the risk of an erroneous deprivation of the private interest at stake through the

procedures used, and the probable value, if any, of additional procedural safeguards.

424 U.S. at 335.

      Even if statutorily authorized, detention may still violate due process if it becomes

excessively prolonged. In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court

rejected a due process challenge to Section 1226(c). The Supreme Court explained that

Congress drafted Section 1226(c) to respond to the high rates of crime and flight by

removable noncitizens convicted of certain crimes and held that "the Government may

constitutionally detain deportable [noncitizens] during the limited period necessary for

their removal proceedings." *Id.* at 518–21, 526.

      In so holding, the Supreme Court stressed the "brief" nature of the mandatory

detention under § 1226(c), which has "a definite termination point" that, in the vast

---

[7] In this District, judges generally have declined to apply *Mathews* when—unlike here— a noncitizen who is subject to prolonged mandatory detention has never had a bond hearing, instead favoring a multi-factor test. *See, e.g.*, *Banda v. McAleenan*, 385 F.Supp.3d 1099, 1106-07 (W.D. Wash. 2019) (addressing mandatory detention under § 1225(b)(1)); *Martinez v. Clark*, No. 18-1669, 2019 WL 5968089, at *6-9, *8 n.8 (W.D. Wash. May 23, 2019), *R & R adopted*, 2019 WL 596285 (W.D. Wash. Nov. 13, 2019) (addressing mandatory detention under § 1226(c)). For Section 1226(c) detainees, those factors are: (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal. *Martinez*, 2019 WL 5968089, at *9. While the Government contends *Mathews* is the appropriate test, it also argues that it should prevail under the multi-factor *Martinez* test. Dkt. 6 at 12-14.

REPORT AND RECOMMENDATION - 10

majority of cases, results in detention of less than about five months. *Id*. at 529-30. In his concurring opinion, which created the majority, Justice Kennedy reasoned that under the Due Process Clause, a noncitizen could be entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id*. at 532 (Kennedy, J., concurring opinion).

Yet the Court in *Demore* did not determine whether bond hearings would be constitutionally required in a case of prolonged, mandatory detention.

Nor did the Court's decision in *Jennings* resolve whether a bond hearing would be constitutionally required. 583 U.S. 281. The Court remanded to the United States Court of Appeals for the Ninth Circuit (583 U.S. at 312-14); the Ninth Circuit did not decide whether a hearing would be constitutionally required. *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 255–256 (9th Cir. 2018). The Ninth Circuit later declined to "take [any] position on [the] question" whether due process requires a bond hearing for Section 1226(c) detainees. *Martinez v. Clark,* 36 F.4th 1219, 1223 (9th Cir. 2022) *cert. granted, judgment vacated and case remanded on other grounds*, 144 S. Ct. 1339 (2024).

The Government argues that under the traditional balancing test of *Mathews*, the facts of this case weigh against finding any violation of due process. 424 U.S. 319; Dkt. 6 at 11-12. Petitioner, in reply, asserts arguments under the multi-factor *Martinez/Banda* test. Dkt. 9.

Because petitioner has already received a bond hearing (at which the Government had the burden), the Court should apply the *Mathews* test in this case. The question before the Court is whether petitioner's prior bond hearing was sufficient to

1  satisfy the due process requirements for prolonged, pre-removal order detention; under

2  the circumstances of petitioner's case, the Court is not considering prolonged detention

3  without any review by an IJ. As *Banda* explained, "Courts apply the *Mathews* test to

4  resolve the question of 'whether the administrative procedures provided . . . are

5  constitutionally sufficient.' Thus, the *Mathews* test balances the benefits or burdens of

6  'additional or substitute procedural safeguards.'" 385 F.Supp.3d at 1006 (quoting

7  *Mathews*, 424 U.S. at 334–35, internal citation omitted).[8]

8  <u>Private Interest</u>

9       "As to the first factor, the private interest at issue here is 'fundamental': freedom

10  from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'"

11  *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (addressing § 1226(a)

12  detainees); *see also Zagal-Alcaraz v. ICE Field Office*, 3:19-cv-01358, 2020 WL

13  1862254 (D. Or. March 25, 2020), at *6, *R & R adopted*, 2020 WL 1855189 (D. Or. Apr.

14  13, 2020) ("Detainees challenging Section 1226(c) mandatory detention 'undoubtedly

15  [have] a strong liberty interest to be free from arbitrary or unreasonable imprisonment.'")

16  (quoted source omitted). Here, petitioner has been detained for approximately 34

17  months[9] and it has been over two years (approximately 28 months) since petitioner's

18  bond hearing – a significant period of time.

19

20  [8] Judges in this district have applied *Mathews* to determine whether due process requires subsequent bond hearings for noncitizens subject to discretionary detention under both § 1226(a) and (c). *See, e.g.*,

21  *Viramontes-Gomez v. Nielsen*, No. 18-935, 2018 WL 6111015, at *4 (W.D. Wash. Oct. 18, 2018), *R. & R. adopted*, 2018 WL 6107293 (W.D. Wash. Nov. 21, 2018); *Singh v. United States Immigr. & Customs Enf't*, No. 222CV00548BHSTLF, 2023 WL 4627819, at *1 (W.D. Wash. Mar. 17, 2023), *report and*

22  *recommendation*, 2023 WL 4624478 (W.D. Wash. July 19, 2023). In contrast, the multi-factor test is designed to "resolve the more fundamental issue of whether any procedure—such as a bond

23  hearing—must be provided." *Banda*, 385 F.Supp.3d 1099, 1106-07.

    [9] Petitioner was transferred from federal criminal custody to ICE custody in Adelanto, California on August

24  30, 2021.

25

REPORT AND RECOMMENDATION - 12

The Government nevertheless argues that petitioner's liberty interest, as a noncitizen, is weaker because "Congress regularly makes rules that would be unacceptable if applied to citizens." Dkt. 6 at 11 (quoting *Denmore*, 538 U.S. at 522). Respondent argues that "[a]ny assessment of the private interests at stake must therefore account for the fact that the Supreme Court has never held that noncitizens have a constitutional right to be released from custody during the pendency of removal proceedings and has in fact held precisely the opposite." *Id.* (citing *Denmore*, 538 U.S. at 530).

Although the Ninth Circuit has acknowledged that detainees at different stages in the removal process may have different levels of interest in freedom from detention, it has rejected the government's efforts to meaningfully distinguish between the liberty interests of detainees subject to post-removal order detention and Section 1226(a) detainees: "Regardless of the stage of the proceedings, the same important interest is at stake—freedom from prolonged detention." *Diouf v. Napolitano*, 634 F.3d 1081, 1087 (9th Cir. 2011). Although *Diouf* did not directly address Section 1226(c), the Court's refusal to accord post-removal order detainees a lesser liberty interest than those detained under Section 1226(a) strongly suggests Section 1226(c) detainees' liberty interest should not be discounted either.

District courts applying the *Mathews* factors have recognized that § 1226(c) detainees have a strong private interest. *See, e.g.*, *Zagal-Alcaraz*, 2020 WL 1862254, at *6; *Singh v. United States Immigr. & Customs Enf't*, No. 222CV00548BHSTLF, 2023 WL 4627819, at *1 (W.D. Wash. Mar. 17, 2023), *report and recommendation adopted*, 2023 WL 4624478 (W.D. Wash. July 19, 2023).

REPORT AND RECOMMENDATION - 13

Petitioner challenged his removal order in the BIA and the Court of Appeals, thereby causing delay, but any delay is also attributable to the Government as the matter has been sent back to the IJ for further factfinding due to an error in the IJ's initial decision. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022) (In addressing a non-citizen's detention under Section 1226(a), the Court indicated that "evaluating Rodriguez Diaz's interests under the first prong of the *Mathews* analysis, we cannot simply count his months of detention and leave it at that. We must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order.").

Accordingly, overall, this factor weighs in petitioner's favor.

<u>Government's Interest</u>

The Government argues it has a strong interest in upholding Section 1226(c)'s statutory framework of mandatory detention for noncitizens whom Congress has deemed pose a flight risk or danger to the community based on their offenses. Dkt. 6 at 12. The Government also argues that it has a particularly strong interest because petitioner has been convicted of serious crimes. *Id.*

The Government has a strong interest in enforcing the statute and detaining noncitizens who pose a danger to the community, and a strong interest in ensuring the successful implementation of removal orders. See *Rodriguez Diaz*, 53 F.4th at 1208. Yet the key government interest at issue "is not the continued detention of petitioner, but the government's ability to detain him without [an additional] bond hearing." *Zagal-Alcaraz*, 2020 WL 1862254, at *7 (collecting cases), *R & R adopted*, 2020 WL 1855189.

<u>Risk of Erroneous Deprivation/Value of Additional Safeguards</u>

1    The Government argues petitioner has received sufficient procedural safeguards.

2    Dkt. 6 at 12. It argues that after the *Rodriguez* bond hearing, the IJ determined the

3    Government had established by clear and convincing evidence that petitioner is a

4    danger to the community and denied bond and that this decision was reviewed and

5    affirmed by the BIA. *Id.* The Government further argues that once petitioner receives a

6    final order of removal his mandatory detention status under Section 1226 will cease and

7    therefore detention is not indefinite or excessive. *Id.*

8    Because petitioner has already received a *Rodriguez* bond hearing (where the

9    Government bore the burden of proof) and an opportunity to appeal, the risk of an

10   erroneous deprivation of his liberty interest and the value of additional procedures is

11   very low unless he can demonstrate a material change in circumstances since his last

12   bond hearing. Petitioner points to the following: he was young when he was convicted

13   and, as a result he lacked maturity, had an underdeveloped sense of  responsibility

14   leading to reckless behavior, and was more vulnerable to negative influences and

15   outside pressures.[10] *See* Dkt. 9. He also argues he has been "rehabilitated" while in

16   custody, completing several courses or programs.[11] *See* Dkt. 9.

17

18

19   ─────────────

[10] Petitioner makes some additional arguments in favor of his release under the *Martinez/Banda* factors, but the Court does not find these to be relevant under the *Mathews* analysis which is applicable here.

20

21   [11] Specifically, petitioner presents evidence, in his response, that he completed "Inspire Parenting" on December 11, 2019, "Anger Management" on August 16, 2018, "12 Things You Probably Don't Know About Father's Day" on June 11, 2019, "Muscular Flexibility" on June 18, 2020, "21 Days of Gratitude Challenge" on October 18, 2018, completed the requirements of the Reentry Event: Mock Job Fair, on June 26, 2019, Emotional Self-Regulation Group on December 13, 2018, "Values for Responsible Living" on February 20, 2018, "Men S.T.O.P. – Public Speaking Course" on October 10, 2019, "Drug Abuse Education Course" on May 8, 2019, "Marketing" on June 5, 2019, "Peer Support Group" on November 17, 2022, "Mother's Day's Dark History" on May 8, 2019, and "Mindfulness Stress Management Class" on February 24, 2022. Dkt. 9 at 17-43.

22

23

24

25

REPORT AND RECOMMENDATION - 15

Petitioner's assertions do not establish a material change in circumstances. Petitioner already had an opportunity to make these arguments and present the evidence of his positive activities -- to the IJ at his previous bond hearing. The record reflects that, at the prior bond hearing, the IJ considered records submitted by petitioner including character letters, petitioner's testimony regarding his criminal history, and steps towards rehabilitation (including the several classes and programs petitioner participated in while in prison), his family in the United States, and his employment history. Dkt. 8-8 at 2-26, Ex. H (transcript of bond hearing). After considering this evidence the IJ denied release on bond, finding that the Government had established by clear and convincing evidence that petitioner was a danger to the community. *Id.* In particular, the IJ noted that petitioner's criminal history, and "particularly the firearms and the intimidation charges" were of "significant concern." *Id.*

The only additional evidence not available or presented at his prior hearing is that petitioner completed the "Peer Support Group" on November 17, 2022, while at the Adelanto ICE Processing Center. Dkt. 9. In light of the IJ's prior bond decision, and based on the record before the Court, petitioner fails to show that his participation in this single group since his last bond hearing establishes a material change in circumstance.

The third *Mathews* factor therefore weighs heavily in favor of the Government.

## **Weighing the Factors**

On balance, the *Mathews* factors weigh in favor of finding that petitioner's detention comports with due process. Petitioner has a strong interest in liberty, and the Government has a strong public policy and safety interest. Although a significant amount of time has passed since petitioner's last bond hearing, he has not shown a material change in circumstances that would warrant a new bond hearing at this time.

**CONCLUSION**

The Court recommends that the Government's motion to dismiss (Dkt. 6) be GRANTED, Petitioner's habeas petition (Dkt. 1) be DENIED, and this action be DISMISSED with prejudice. A proposed order and judgment accompanies this Report and Recommendation.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the above time limit, the Clerk shall set this matter for consideration on **July 15, 2024**, as noted in the caption.

Dated this 28th day of June, 2024.

Theresa L. Fricke
United States Magistrate Judge